UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: <br><br> VEG LIQUIDATION, INC. and <br> ALL VEG LLC, <br><br> Debtors. | Jointly Administered Under <br> Case No. 5:13-bk-73597-BTB <br><br> Chapter 7 |
| R. RAY FULMER, II, CHAPTER 7 TRUSTEE <br><br> Plaintiff, <br><br> v. <br><br> ALVAREZ & MARSAL NORTH AMERICA, LLC; ALVAREZ & MARSAL PRIVATE EQUITY PERFORMANCE IMPROVEMENT, LLC; JONATHAN HICKMAN; CARY DANIEL; NICHOLAS CAMPBELL; and, MARKUS LAHRKAMP, <br><br> Defendant. | A.P. No. _____-BTB |

## ADVERSARY COMPLAINT

**COMES NOW**, R. Ray. Fulmer, II, as Chapter 7 Trustee (the "*Trustee*") for Veg Liquidation, Inc. f/k/a Allens, Inc. ("*VLI*") and All Veg, LLC ("*All Veg*" together with VLI the "*Debtors*"), by and through his undersigned counsel, and for his Complaint, respectfully states as follows:

### THE PARTIES

1. R. Ray Fulmer, II is the Chapter 7 Trustee for the Debtors.

2. VLI is an Arkansas corporation currently in Chapter 7 bankruptcy proceedings with offices formerly located at 305 E. Main Street, Siloam Springs, Arkansas, 72761. VLI is a wholly owned subsidiary of All Veg.

3. All Veg is an Arkansas limited liability corporation currently in Chapter 7 bankruptcy proceedings with offices formerly located at 305 E. Main Street, Siloam Springs, Arkansas, 72761.

4. Debtors are the trustees of the trust created against perishable agricultural commodities sold, directly or indirectly, to VLI and All Veg pursuant to the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t ("*PACA*").

5. Alvarez & Marsal North America, LLC ("*A&M North America*") is a Delaware limited liability company with its principal office located at 600 Madison Ave, New York, NY 10022.

6. Alvarez & Marsal Private Equity Performance Improvement, LLC ("*A&M Private Equity*") is a Delaware limited liability company with its principal office located at 600 Madison Ave, New York, NY 10022. (A & M North America and A & M Private Equity, together, "*A&M*").

7. On information and belief, Jonathan Hickman ("*Hickman*") is an individual resident of the State of North Carolina. On information and belief, Hickman is a Managing Director with A&M and served as Chief Restructuring Officer of Debtors. On information and belief, Hickman regularly conducts his business at Alvarez & Marsal, 112 South Tryon Street, Suite 1755, Charlotte, North Carolina 28284.

8. On information and belief, Cary Daniel ("*Daniel*") is an individual resident of the State of Georgia. On information and belief, Daniel is a Director with A&M and served as Assistant Chief Restructuring Officer of Debtors. On information and belief, Daniel regularly conducts his business at Alvarez & Marsal, 3424 Peachtree Road, NE, Suite 1500, Atlanta, Georgia 30326.

9. On information and belief, Nicholas Campbell ("*Campbell*") is an individual resident of the State of Georgia. On information and belief, Campbell is a Director with A&M and served as Assistant Chief Restructuring Officer of Debtors. On information and belief, Campbell regularly conducts his business at Alvarez & Marsal, 3424 Peachtree Road, NE, Suite 1500, Atlanta, Georgia 30326.

10. On information and belief, Markus Lahrkamp ("*Lahrkamp*") is an individual resident of the State of New York. On information and belief, Lahrkamp is a Managing Director with A&M and served as Assistant Chief Restructuring Officer of Debtors. On information and belief, Lahrkamp regularly conducts his business at Alvarez & Marsal, 600 Madison Avenue, 8th Floor, New York, New York 10022. (Hickman, Daniel, Campbell, and Lahrkamp, together, the "*Restructuring Officers*") (A&M and the Restructuring Officers, collectively, the "*Defendants*")

11. Defendants provided professional financial advisory services, turn-around consulting services, and other business consulting services to the Debtors at all times relevant to this action.

12. At all times relevant hereto, VLI sold wholesale quantities of perishable agricultural commodities (hereinafter "*Produce*") in interstate commerce and operated its business under a valid United States Department of Agriculture issued PACA License.

13. At all times relevant hereto, the Debtors were engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, are a "dealer" of Produce as defined by PACA.

14. At all times relevant hereto, the Debtors were engaged in the business, directly or indirectly, of negotiating sales and purchases of Produce in interstate or foreign commerce for or on behalf of a vendor or purchaser, respectively, and, therefore, are a "broker" of Produce as defined by the PACA.

3

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to: 28 U.S.C. § 157; 28 U.S.C. § 1334; 7 U.S.C. § 499e(c)(4); 28 U.S.C. § 1367(a); and, 28 U.S.C. § 1655.

16. Venue of the Debtors' bankruptcy cases and of this matter is proper in this district pursuant to 28 U.S.C. § 1409.

17. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

## FACTUAL ALLEGATIONS

18. Prior to October 28, 2013 (the "*Petition Date*"), each of the entities identified in the chart attached hereto as Exhibit "A" (collectively the "*Produce Suppliers*") sold to the Debtors, and the Debtors purchased from each of the Produce Suppliers, certain Produce having an invoice value in the aggregate amount of $36,585,737.03.

19. By and though their participation in the above styled bankruptcy proceeding, certain of the Produce Suppliers received payments in full or partial satisfaction of their claims. *See* Exhibit "A." As a direct result of the application of all payments actually made to certain of the Produce Suppliers after the Petition Date, the Debtors currently owe no less than $24,850,743.05, plus further interest and costs, including reasonable attorneys' fees, to the Produce Suppliers.

20. The Debtors received each of the shipments of Produce which corresponds to the Produce Suppliers' unpaid invoices comprising the amounts listed on Exhibit "A."

21. The Debtors accepted each load of Produce which corresponds to the Produce Suppliers' unpaid invoices, or other relevant evidence of an unpaid delivery of fresh or frozen Produce, comprising the amounts listed on Exhibit "A."

22. The Produce Suppliers each issued to the Debtors, and the Debtors received, individual invoices for each shipment comprising the amounts listed on Exhibit "A."

23. Debtors and the Produce Suppliers entered into the various contracts for the supply of fresh or frozen Produce.

24. In each contract, the Produce Suppliers agreed to sell Produce to the Debtors and the Debtors agreed to purchase Produce from the Produce Suppliers.

25. The Produce Suppliers each delivered goods to the Company which conformed to the requirements set forth in each contract and have otherwise satisfied all conditions of said contracts.

26. The Produce Suppliers each became beneficiaries of the Debtors' PACA trust obligations upon their delivery of Produce to the Debtors.

27. The Debtors failed to pay the invoices, or other relevant evidence of an unpaid delivery of fresh or frozen Produce, comprising the amounts listed on Exhibit "A" within the applicable payment terms that were in effect between the parties at the time of each transaction.

28. The Produce Suppliers are each unpaid suppliers or sellers of Produce having sold Produce to the Debtors for which the Produce Suppliers remain unpaid.

29. Despite repeated demands from the Produce Suppliers, the Debtors' failed to deliver good funds to the Produce Suppliers in the amounts set forth under the "Net Amount Outstanding" column in Exhibit "A."

30. As a direct result of the Debtors' failure to pay for shipments of Produce comprising the amounts listed on Exhibit "A," the Produce Suppliers have incurred damages in the current aggregate amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees incurred in this action.

5

31. At all times relevant hereto, the Debtors were in possession, custody and control of all assets derived from the Debtors' sale of perishable agricultural commodities (the "*PACA Trust Assets*") for the benefit of Debtor's unpaid Produce Suppliers.

32. The Debtors failed to deliver to the Produce Suppliers sufficient funds from the PACA Trust Assets to pay for the shipments of Produce listed in Exhibit "A."

33. The Debtors failed to preserve sufficient amounts of the PACA Trust Assets to fully satisfy all qualified PACA claims, such as the Produce Suppliers' unpaid claims asserted in this action.

34. As a direct result of the Debtors' failure to properly protect the PACA Trust Assets from dissipation, the Produce Suppliers have suffered damages which are covered under the PACA trust in the current aggregate amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees incurred in this action.

35. On information and belief, for the period of time that Defendants provided professional financial advisory services, turn-around consulting services, and other business consulting services to the Debtors immediately preceding the Petition Date (the "*Relevant Time Period*") Debtors were insolvent and lacked the ability to pay their debts, including their debts to Produce Suppliers, as they came due.

36. A&M is a third party transferee and recipient of certain of the Debtors' PACA Trust Assets paid to it during the Relevant Time Period (each a "*Payment*" and together, the "*Payments*"). As a result, Trustee seeks the entry of an Order directing A&M to immediately turn over to the Trustee all assets impressed with the PACA trust for the benefit of all of the Debtors' unpaid suppliers of Produce, such as the Produce Suppliers herein, thereby creating a fund for the common benefit of said Produce Suppliers.

37. Upon information and belief, A&M received the following Payments from the Debtors during the Relevant Time Period:

| Date | Amount |
|---|---|
| February 1, 2013 | $ 107,556.00 |
| February 15, 2013 | $ 133,212.50 |
| February 22, 2013 | $ 208,672.50 |
| February 28, 2013 | $ 123,899.15 |
| March 7, 2013 | $ 219,609.87 |
| March 14, 2013 | $ 76,451.99 |
| March 15, 2013 | $ 122,995.00 |
| March 21, 2013 | $ 229,766.29 |
| March 28, 2013 | $ 225,459.32 |
| April 4, 2013 | $ 229,032.70 |
| April 11, 2013 | $ 232,835.29 |
| April 18, 2013 | $ 221,214.60 |
| April 26, 2013 | $ 221,903.45 |
| May 2, 2013 | $ 210,825.18 |
| May 10, 2013 | $ 213,279.23 |
| May 17, 2013 | $ 225,025.31 |
| May 23, 2013 | $ 219,944.00 |
| May 24, 2013 | $ 22,935.00 |
| May 31, 2013 | $ 176,324.90 |
| June 10, 2013 | $ 212,179.74 |
| June 17, 2013 | $ 212,148.98 |
| June 25, 2013 | $ 163,536.28 |
| July 1, 2013 | $ 174,769.26 |
| July 8, 2013 | $ 162,558.93 |
| July 12, 2013 | $ 198,581.90 |
| July 19, 2013 | $ 169,955.51 |
| July 26, 2013 | $ 223,998.71 |
| August 1, 2013 | $ 214,128.16 |
| August 9, 2013 | $ 195,526.82 |
| August 16, 2013 | $ 187,279.16 |
| August 23, 2013 | $ 191,905.96 |
| August 30, 2013 | $ 215,501.28 |
| September 6, 2013 | $ 202,236.00 |
| September 13, 2013 | $ 170,173.85 |
| September 20, 2013 | $ 142,182.09 |
| September 25, 2013 | $ 175,000.00 |
| September 27, 2013 | $ 159,874.70 |
| October 1, 2013 | $ 202,477.66 |
| October 4, 2013 | $ 203,859.21 |

|  |  |
|---|---|
| October 11, 2013 | $ 180,205.27 |
| October 18, 2013 | $ 100,000.00 |
| Total | $7,479,021.75 |

## COUNT I
## **BREACH OF FIDUCIARY DUTY**

38. Trustee re-alleges paragraphs 1 through 37 as though fully set forth herein.

39. At all times relevant to this action, Defendants provided professional financial advisory services, turn-around consulting services, and other business consulting services to the Debtors (hereinafter collectively "*Professional Services*") for no less than ten (10) months prior to the Petition Date.

40. Defendants provided Professional Services to the Debtors while the Debtors were in the zone of insolvency and were otherwise experiencing severe financial distress.

41. At all times relevant to this action, Defendants controlled and managed the Debtors' operations and had control over the Debtors' financial dealings, including those involving the PACA Trust Assets.

42. At all times relevant to this action, the Defendants were in a position to control and manage the Debtors' operations and had the ability to control the Debtors' financial dealings, including those involving the PACA Trust Assets.

43. At all times relevant to this action, the Defendants had the authority to direct or influence Debtors' cash management strategies including the allocation and payment of the Debtors' operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

44. Defendants were each statutory trustees with a duty to safeguard the PACA Trust Assets and were required to maintain the trust assets in such a manner as to ensure there were, at all

8

times, sufficient trust assets available to satisfy all the Debtors' outstanding Produce related obligations such as those owed to the Produce Suppliers herein.

45. Defendants were each statutory trustees with a duty to ensure that the Debtors performed all duties, express or implied, arising out of the Debtors' undertakings in connection with the Debtors' Produce transactions, which included, *inter alia*, ensuring that there were, at all times, sufficient trust assets available to satisfy all of the Debtors obligations to its unpaid Produce Suppliers.

46. Defendants were each in a position to exercise judgment, discretion or control over the Debtors' operations and its financial dealings, which included, *inter alia*, ensuring that there were, at all times, sufficient trust assets available to satisfy all of the Debtors obligations to its unpaid Produce Suppliers.

47. Defendants were each in a position to exercise judgment, discretion or control over the Debtors' operations and its financial dealings, which included, *inter alia*, ensuring that the Debtors neither acted nor failed to act in any manner that could result in the diversion of PACA Trust Assets or which could prejudice or impair the ability of the Debtors' Produce Suppliers to recover money owed to each of them in connection with their respective Produce transactions with the Debtors.

48. Defendants knew or should have known of the Debtors' failure to pay each of the Produce Suppliers identified in Exhibit "A" as their respective bills came due.

49. As professional financial and business advisors to the Debtors with the authority to control all of Debtor's cash disbursements, the Defendants each possessed the power necessary to counteract or obviate the decisions of the Debtors, or other Defendants, not to pay the Produce Suppliers or to dissipate the Debtors' PACA Trust Assets.

50. Because each of the Defendants were either in control or were in a position to control the Debtors, and the Produce Suppliers' invoices have not been paid from PACA Trust Assets as their bills came due, the Defendants have each breached their fiduciary duties under the PACA trust.

51. Because each of the Defendants were either in control or were in a position to control the Debtors, and the Defendants failed to prevent the dissipation of the Debtors' PACA Trust Assets, the Defendants have each breached their fiduciary duties under the PACA trust.

52. Because each of the Defendants were either in control or were in a position to control the Debtors, and the Defendants failed to ensure that there were, at all times, sufficient trust assets available to satisfy all of the Debtors obligations to its unpaid Produce Suppliers, the Defendants have each breached their fiduciary duties under the PACA trust.

53. Because each of the Defendants were either in control or were in a position to control the Debtors, and the Defendants failed to counteract or obviate the decisions of the Debtors, or other Defendants, not to pay the Produce Suppliers from the Debtors' PACA trust assets, the Defendants have each breached their fiduciary duties under the PACA trust.

54. The Defendants are liable to the Trustee, jointly and severally, for the dissipation of the PACA trust in the current aggregate amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees incurred in this action.

## COUNT II
### INTERFERENCE WITH RECEIPT OF TRUST ASSETS

55. Trustee re-alleges paragraphs 1 through 54 as though fully set forth herein.

56. Defendants provided professional financial advisory services, turn-around consulting services, and other business consulting services to the Debtors during the Relevant Time Period and received payments from the Debtors operating funds for those services.

57.     At all times relevant to this action, the Defendants were either in control or in a position to control the PACA Trust Assets of the Debtors.

58.     At all times relevant to this action, Defendants knew or should have known that the Debtors had outstanding accounts payable to the various Produce Suppliers.

59.     On information and belief, Defendants caused, either intentionally or negligently, the Debtors to commit a breach of the PACA trust by, *inter alia*, transferring PACA Trust Assets from the Debtor to non-PACA trust beneficiaries in violation of their duties under PACA.

60.     The Produce Suppliers are each beneficiaries of the Debtors' PACA trust who were entitled to immediate distribution of the PACA Trust Assets by virtue of the unpaid invoices compromising the amounts in Exhibit "A."

61.     On information and belief, persons or entities who are not PACA trust beneficiaries received PACA Trust Assets subject to the Produce Suppliers unpaid PACA claims as set forth in Exhibit "A" herein.

62.     In transferring PACA Trust Assets from the Debtors to non-PACA trust beneficiaries, Defendants, intentionally or negligently, damaged that property and/or interfered with its delivery to the Produce Suppliers and other similarly situated PACA trust creditors.

63.     Defendants, intentionally or negligently, failed to preserve the Debtors' PACA Trust Assets for the benefit of the Produce Suppliers and other similarly situated PACA trust creditors.

64.     As a direct result of the Defendants' intentional or negligent interference with the PACA Trust Assets and the delivery of the same to certain non-PACA trust beneficiaries, the Trustee has incurred damages in the current aggregate amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees, incurred in this action.

## COUNT III

### CONVERSION AND UNLAWFUL RETENTION OF PACA TRUST ASSETS

65. Trustee re-alleges paragraphs 1 through 64 as though fully set forth herein.

66. On information and belief, prior to the Petition Date, the Debtors entered into multiple agreements (the "*Agreements*") with A&M to obtain professional financial advisory services and turn-around consulting services.

67. On information and belief, the Debtors employed the services of A&M to help Debtors manage and possibly turn around the Debtors' finances, which were in severe distress.

68. On information and belief, A&M did, in fact, perform professional services for the Debtors for at least ten (10) months prior to the Petition Date.

69. On information and belief, A&M and the other Defendants directed that the Debtors use PACA Trust Assets to pay A&M's professional fees.

70. At the time the Debtors made the payments to A&M and A&M accepted said payments and wrongfully continued to possess the payments, A&M knew or should have known the Debtors were engaged in the purchase and sale of Produce.

71. At the time the A&M directed Debtors to make the payments to A&M and A&M accepted said payments and wrongfully continued to possess the payments, A&M knew or should have known the Debtors derived all or a majority of their revenue from the sale of Produce.

72. At the time the A&M directed Debtors to make the payments to A&M and A&M accepted said payments and wrongfully continued to possess the payments, A&M knew or should have known the Debtors were financially troubled and could not pay for purchases of Produce.

73. At the time the A&M directed Debtors to make the payments to A&M and A&M accepted said payments and wrongfully continued to possess the payments, A&M knew or should have known that the Debtors had outstanding accounts payable to the various Produce Suppliers.

74. On information and belief, A&M derived substantial economic benefit to the detriment of Produce Suppliers by accepting payments from Debtors, which the Debtors paid with funds generated through its transactions in Produce.

75. On information and belief, A&M continues to hold assets the Debtors generated through their transactions in Produce.

76. A&M is in possession of certain assets it received from the Debtors which were impressed with the PACA trust.

77. The assets of A&M received are PACA Trust Assets and rightfully belong to the Produce Suppliers.

78. On or about October 24, 2014, the Trustee sent a letter to A&M requesting that A&M account for and return all PACA Trust Assets that A&M received from the Debtors (the "*Demand Letter*").

79. On or about December 5, 2014, A&M sent a letter to the Trustee stating that it declined the Trustee's demand.

80. A&M continues to wrongfully hold any and all PACA Trust Assets having come into its possession in a manner inconsistent with the rights of the Trustee and the Produce Suppliers.

81. A&M's receipt and possession of the PACA Trust Assets rightfully belonging to the Produce Suppliers, while the Debtors' Produce Suppliers remain unpaid for the Produce transactions with the Debtors, is a violation of the PACA and the regulations promulgated thereunder.

82. A&M's unjust receipt and possession of the PACA Trust Assets rightfully belonging to the Produce Suppliers further contributed to the dissipation of the PACA trust.

## COUNT IV

## **UNJUST ENRICHMENT**

83. Trustee re-alleges paragraphs 1 through 82 as though fully set forth herein.

84. On information and belief, A&M has converted to their own use and benefit, certain PACA Trust Assets.

85. The Produce Suppliers each sold and delivered Produce to the Debtors, and the Debtors received and resold said Produce, for which they have not been paid.

86. At the times relevant hereto, A&M knew or should have known that the Debtors had outstanding accounts payable to the various Produce Suppliers.

87. At all times relevant hereto, A&M knew or should have known that they received payments that are PACA Trust Assets which were impressed with the PACA trust and that A&M was not entitled to retain the payments.

88. No just cause exists in law or equity for A&M to receive or retain any portion of the Debtors' PACA Trust Assets while the Debtors' Produce Suppliers remain unpaid.

89. If A&M is allowed to retain said PACA Trust Assets, it will be unjustly enriched to the detriment of the Debtors and their Produce Suppliers.

90. As a direct and proximate cause of the wrongful conversion of funds due to the Produce Suppliers as unpaid suppliers of Produce to the Debtors, the Produce Suppliers have been damaged and A&M has been unjustly enriched in the amount of the Payments.

**WHEREFORE**, the Trustee respectfully seeks the entry of an Order providing as follows:

A) As to Count I: (i) entering an Order creating a common fund and/or otherwise compelling the preservation of the Debtors' PACA Trust Assets for the benefit of the Debtors' unpaid Produce Suppliers, (ii) entering an Order directing the Defendants to immediately turn over to the Trustee all assets impressed with the PACA trust for the benefit of all the Debtors' unpaid Produce Suppliers, and; (iii) entering a Final Judgment in favor of Trustee and against the Defendants, on a joint and several basis, for a breach of their respective fiduciary duties to the Debtors' PACA trust, in the current amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees incurred herein;

B) As to Count II: entering a Final Judgment in favor of Trustee and against Defendants for their tortious interference with the Produce Suppliers' receipt of the Debtors' PACA Trust Assets, in the current amount of $24,850,743.05, plus further interest and costs of collections, including attorneys' fees incurred herein;

C) As to Count III: (i) entering an Order compelling A&M to account to both this Court and the Trustee for all funds or other assets it received, collected, or seized from the Debtors; (ii) entering an Order directing A&M to immediately turn over to the Trustee any and all assets impressed with the PACA trust for the benefit of all the Debtors' unpaid Produce Suppliers, including, but not limited to, any and all funds or other assets the Defendants received, collected or seized from the Debtors, and; (iii) entering a Final Judgment in favor of the Trustee and against A&M in an amount to be determined by the Court, for the value of the PACA Trust Assets at the time of the conversion, plus further interest and costs of collections, including attorneys' fees incurred herein;

D) As to Count IV: entering a Final Judgment in favor of the Trustee and against A&M in the amount of the PACA Trust Assets received by A&M, plus further interest and costs of collections, including attorneys' fees incurred herein; and,

E) Granting such other and further relief as the Court deems appropriate upon consideration of this matter.

Dated this 12th day of December, 2014.

Respectfully submitted,

/s/ Stephen P. Leara
Stephen P. Leara (admitted *pro hac vice*)
Jay H. Clark (admitted *pro hac vice*)
Wallace, Jordan, Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Telephone: (205) 870-0555
Email: sleara@wallacejordan.com